**In re John H. CARTER.**

**Appeal No. 81–593.**

United States Court of Customs
and Patent Appeals.

April 1, 1982.

Franklin D. Wolffe, Washington, D. C., and Thomas F. Smegal, Jr., San Francisco, Cal., for appellant.

Joseph F. Nakamura, Sol., and Harris A. Pitlick, Asst. Sol., of Washington, D. C., for the Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

NIES, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the rejections under 35 U.S.C. § 103 and the "on sale" bar of 35 U.S.C. § 102(b) of appellant's design as claimed in application serial No. 633,511, filed November 20, 1975, for "Infant's Combined Shirt and Nether Garment." We affirm the § 103 rejection and thus need not reach the issue of an "on sale" bar.

### Background

The claimed ornamental design is for an infant's combined shirt and nether garment of simple lines. In the shirt portion the main features consist of short sleeves, rounded neck, rounded front shirttails and a center opening all of which are edged or hemmed. Closure means are found on the center placket and at each side of the waist. The nether portion is tapered to the shape of the infant and ends in a waistband with closure members such that, on folding, these members join the corresponding members on the shirt portion. The waistband encompasses only one-half the garment while the edging is continuous around the nether portion.*

The Carter reference, U.S. utility patent No. 1,292,703, issued January 28, 1919, shows a comparable infant's garment having a shirt portion with short sleeves, rounded neck, rounded shirttails, center opening and similarly positioned side closure means. The nether portion in Carter is full, not being shaped to the infant, and

is drawn in by gathering at the waistband. The waistband encircles the garment, the protruding ends being joined by a fastener.

The Geissmann reference, U.S. utility patent No. 2,671,220, issued March 9, 1954, shows another combined baby's garment wherein the nether portion is tapered, being narrow between the infant's legs and gradually widening up to a waistband. Here also the waistband strap encircles the garment and is fastened both in front and back.

The board affirmed the rejection under 35 U.S.C. § 103 of the claimed design in view of the Carter and Geissmann patents. Although the Carter reference did not show a tapered nether portion, the Geissmann patent was relied upon for a flap having this configuration. The elimination of the surrounding belt portions of Carter was held to have been "merely the elimination of a recognized child garment ornamentation which would have been an obvious design modification." Although Carter describes his Fig. 4 (the view showing a center opening) as the back of the garment, Fig. 2 also being this view, the board found the Carter garment to have the "same design appearance, regardless of how it is worn." Accordingly, the board stated:

> From an ornamental standpoint, we do not find that the distinctions from the prior art noted by the appellant would have been unobvious to one of ordinary skill in the art considering the appearance of the appellant's garment invention as a whole.

The rejection under 35 U.S.C. § 102(b) was based on an invoice purportedly showing that the article embodying the claimed design was "on sale" more than one year prior to the filing date of the design appli-

---

* Figures from appellant's design application and the two references relied upon in the 103 rejection are found in the appendix. It is noted that Figs. 2 and 3 of appellant's design are inconsistent with respect to the appearance of the edges of the nether portion, plain in Fig. 2 but bound or hemmed in Fig. 3 on the same side. Accordingly, we give little weight to this feature.

cation. In view of our disposition of the case, there is no need to detail the facts leading up to this rejection. We merely note that the board also sustained the § 102 rejection, finding that there had been a reduction to practice of the invention and an offering of the garments for sale, as evidenced by an order date on the invoice, prior to the critical date.

## OPINION

The proper test for determining obviousness of a claimed design under 35 U.S.C. § 103 is whether the design would have been obvious to a designer of ordinary skill who designs articles of the type involved. *In re Nalbandian*, 661 F.2d 1214, 1216, 211 USPQ 782, 784 (Cust. & Pat.App. 1981). Appellant's claimed design lies within the realm of designers of baby garments.

Moreover, when a § 103 rejection is based upon a combination of references, there must be a reference, a "something in existence," the design characteristics of which are basically the same as the claimed design. *In re Rosen*, 673 F.2d 388 (Cust. & Pat.App.1982). The designs of other references may properly be relied upon for modification of this basic design when the references are "so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *In re Glavas*, 43 CCPA 797, 801, 230 F.2d 447, 450, 109 USPQ 50, 52 (1956).

The Carter and Geissmann references are both directed to infant garments of the same general type as appellant's, namely, a combined shirt and nether garment of simple lines. Either reference would satisfy the *Rosen* requirement of an ornamental design basically the same as the claimed design. The design characteristics of these garments essentially lie in their shapes as they are without added decorative features.

The examiner's selection of the Carter design as the basic reference was appropriate inasmuch as the shape of the elongated shirt, neck, sleeves and opening placket is nearly identical to the shape of these features in appellant's design. The main difference of appellant's design from Carter's is the shape of the flap or nether portion. The Geissmann design, however, is clearly so closely related that the adoption of features therein for modification of the Carter design would be readily suggested. Thus, we believe that it would have been obvious to one of ordinary skill in the art of designing such garments to modify the Carter design by adopting the tapered shape of Geissmann, without hindsight of appellant's design. Appellant relies on no aesthetic differences which would make it not obvious to do so.

The elimination of the end portions of the waistband and of any cinching of the waist portion these ends might cause are de minimis changes which would be well within the skill of an ordinary designer in the art and do not create a patentably distinct design. Although appellant attacks the examiner's statement that elimination would have been obvious if the "aesthetic appearance of the rear belt of the [Carter garment] is not desired" as an improper test of obviousness, we view this simply as a statement, however inartfully expressed, of that which would lie within the ordinary skill of a designer of baby garments. The board's language with respect to this "modification" can be similarly interpreted.

Appellant's argument that what is designated as the back of the Carter garment should not be compared to the front of appellant's garment is without merit. That argument is directed to use, not design. In any event, the PTO correctly looked at the design disclosed in Carter in making the § 103 rejection, not the labelling. The designated manner of use bears no weight in the determination of the obviousness of appellant's claimed design over the designs of the prior art.

Accordingly, we agree with the board that the Carter and Geissmann references render the overall appearance of the claimed design one that would have been obvious to a baby garment designer of ordinary skill. The § 103 rejection is *affirmed*.

AFFIRMED.

## APPENDIX

APPELLANT'S CLAIMED DESIGN:

*Fig-1*          *Fig-2*          *Fig-3*

FIGURES 2-4 OF CARTER PATENT, U.S. 1,292,703:

FIGURES 2, 3 AND 5 OF GEISSMANN PATENT, U.S. 2,671,220:

---

MILLER, Judge, concurring.

I would affirm the decision of the board on the 35 U.S.C. § 102 issue.

RICH, Judge, dissenting.

The ornamental designs with which 35 U.S.C. § 171 is concerned involve only the overall appearance of articles of manufacture, taken as a whole, this last aspect being prescribed by 35 U.S.C. § 103. The statutory law therefore requires that we judge patentability in its non-obviousness aspect on the basis of whether the claimed design looks like designs in the prior art.

The most eloquent part of the majority opinion is its appendix, it being impossible to change by any quantity of explanatory words what is there shown.

Appellant's INFANT'S COMBINED SHIRT AND NETHER GARMENT, while it may have the same functional features as the two garments in the prior art, relied on jointly to show obviousness, looks like neither of them.

While we have somewhat altered the legal test of *In re Laverne*, 53 CCPA 1158, 356 F.2d 1003, 148 USPQ 674 (1966), relied on by the dissenting member of the board, in our *In re Nalbandian*, 661 F.2d 1214, 1216, 211 USPQ 782, 784 (Cust. & Pat.App., 1981), nothing in the latter case suggests

that we reached the wrong result in *Laverne*, which this court consistently followed for fifteen years. Obviously, appellant's garment design differs in appearance from the prior art to a far greater extent than the Laverne chair differed from Saarinen's chair.

There is about as much similarity of appearance between the claimed garment and the prior art as there is between a sailor's pea-jacket and a tuxedo or between bloomers (circa 1919, Carter's date) and modern shorts. Why a baby garment designer of ordinary skill would be expected to progress from Carter and/or Geissmann to appellant's design is beyond my comprehension. How or why would he be motivated to do so? The claimed garment design has differently shaped sleeves, undisclosed marginal bindings or edge treatment, no fullness to be gathered in by the belt, only a half belt instead of a wrap-around, selective side snap-fastenings instead of a single belt button, and the net result is a garment which, as a whole, simply looks very different. I agree with the dissenting member of the board that the PTO has not made out its prima facie case. The board decision affirming the § 103 rejection should be reversed.