AVIA GROUP INTERNATIONAL, INC.,
(Formerly Pensa, Inc.),
Plaintiff–Appellee,

v.

L.A. GEAR CALIFORNIA, INC.,
Defendant–Appellant.

No. 87–1505.

United States Court of Appeals,
Federal Circuit.

July 29, 1988.

1558

Perry J. Saidman, of Saidman, Sterne, Kessler & Goldstein, Washington, D.C., argued for plaintiff-appellee.

John J. Quinn, of Kelley Drye & Warren, New York City, argued for defendant-appellant.

Before SMITH, NIES and MAYER, Circuit Judges.

NIES, Circuit Judge.

L.A. Gear California, Inc. (LAG) appeals the decision of the United States District Court for the Central District of California, *Pensa, Inc. v. L.A. Gear of California, Inc.*, 4 USPQ2d 1016 (C.D.Cal.1987), granting the motion of Avia Group International, Inc. (formerly Pensa, Inc.) for summary judgment holding United States Design Patent Nos. 284,420 ('420) and 287,301 ('301) valid as between the parties and willfully infringed, and the case exceptional under 35 U.S.C. § 285 (1982). We affirm.

## I

## BACKGROUND

Avia owns the '420 patent, claiming an ornamental design for an athletic shoe outer sole, and the '301 patent, claiming an ornamental design for an athletic shoe upper, by assignment from the inventor, James Tong. LAG ordered and sold shoes, Model No. 584 "Boy's Thrasher" ("Thrasher") and Model No. 588 "Boy's Thrasher Hi-Top" ("Hi-Top"), designed and manufactured for it by Sheng Chun Chemical Ind. Corp. in Taiwan. Avia filed suit against LAG alleging, *inter alia*, that both of LAG's models infringed its '420 design patent and that LAG's Hi-Top model also infringed the '301 design. LAG counterclaimed for a declaratory judgment that the two patents were not infringed and were invalid because the designs were both obvious and functional. Avia moved for partial summary judgment on the patent validity and infringement issues and for attorney fees.

Finding no bona fide dispute as to any material fact and that Avia had shown entitlement to judgment as a matter of law, the court granted Avia's motion after a hearing. It determined that the infringement was willful and that the case was exceptional within the meaning of 35 U.S.C. § 285 (1982), thus providing the basis for an award of attorney fees. The court also issued a permanent injunction enjoining further infringement by LAG. Because the court reserved decision on the amounts to be awarded as damages and as attorney

fees, these matters are not involved in this appeal.[1]

## II

## SUMMARY JUDGMENT

### A. *Procedural Aspects*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ In the recent Supreme Court case of *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court expanded the group of situations in which summary judgment is appropriate. To create a genuine issue of fact, the nonmovant must do more than present *some* evidence on an issue it asserts is disputed. The Court stated:

[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence [of the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted.

477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). This standard "mirrors" that required to obtain a directed verdict. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Thus, a nonmovant must do more than merely raise some doubt as to the existence of a fact; evidence must be forthcoming from the nonmovant which would be sufficient to require submission to the jury of the dispute over the fact.

On the other hand, the evidence must be viewed in a light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor. *See e.g., United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Interpart Corp. v. Italia*, 777 F.2d 678, 681, 228 USPQ 124, 126 (Fed.Cir.1985); *Petersen Mfg. Co. v. Central Purchasing, Inc.*, 740 F.2d 1541, 1546, 222 USPQ 562, 565–66 (Fed.Cir.1984). Further, the movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See, e.g., Cooper v. Ford Motor Co.*, 748 F.2d 677, 679, 223 USPQ 1286, 1288 (Fed.Cir.1984). On that point, however, the burden is not as heavy as some decisions have held. The moving party need not "produce evidence showing the absence of a genuine issue of material fact"; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554.

The recent trilogy of Supreme Court cases establishes that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1); *see also Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562, 4 USPQ2d 1793, 1795 (Fed.Cir. 1987).

■ LAG makes much of a perceived "unfairness" in the grant of summary judgment against it in that summary judgment "precluded" LAG from trial procedures such as presenting its evidence by live witnesses and cross-examining witnesses of its opponent. That argument is meritless. Ample due process safeguards are available in the summary judgment procedures of Rule 56. *See, e.g.,* Fed.R.Civ.P. 56(f) (when nonmovant cannot present facts essential to his opposition through affidavit, "court may refuse the application

---

**1.** Upon grant of the summary judgment motion, all other counts of the complaint were dismissed. Thus, the interlocutory judgment is appealable under 28 U.S.C. §§ 1292(c)(1) & (2) (1982).

for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just"); *see also Celotex*, 477 U.S. at 326, 106 S.Ct. at 2504; *Sweats Fashions*, 833 F.2d at 1566–67, 4 USPQ2d at 1798–99. Thus, a litigant is not "deprived" of a trial, as LAG argues, upon grant of summary judgment where the evidence of record at the time of the motion supports its opponent on all key issues and the nonmovant fails to put in sufficient evidence to create a triable issue of any material fact.

■■■ LAG also raises the familiar cry that summary judgment was granted before it could complete its discovery. A litigant's right to discovery is fully protected by Fed.R.Civ.P. 56(f), which allows a court to refuse summary judgment if a litigant shows, "by affidavit," that additional discovery is necessary to uncover "facts essential to justify his position." On the other hand, a litigant's complaint that it needed discovery will not be heard on appeal when discovery was precluded by its own failure to seek Rule 56(f) protection. In this case, LAG did not invoke Rule 56(f) and attempt to convince the trial court that it could not properly respond to Avia's summary judgment motion without additional discovery. Had it done so, there would be an appealable discovery issue. Having failed to do so, there is none.

Finally, this court has repeatedly emphasized that "summary judgment is as appropriate in a patent case as in any other." *See, e.g., Spectra Corp. v. Lutz*, 839 F.2d 1579, 1581 n. 6, 5 USPQ2d 1867, 1869 n. 6 (Fed.Cir.1988); *Brenner v. United States*, 773 F.2d 306, 307, 227 USPQ 159, 160 (Fed. Cir.1985); *Petersen Mfg.*, 740 F.2d at 1546, 222 USPQ at 565; *Barmag Barmer Maschinenfabrik v. Murata Mach., Ltd.*, 731 F.2d 831, 835, 221 USPQ 561, 564 (Fed.Cir. 1984). LAG's understanding that "summary judgment is not an appropriate procedure to determine the issues of patent validity and is particularly inappropriate to a finding of willfulness in an infringement action" is outmoded. The question is whether summary judgment was properly granted on the evidence of record. It is no longer debatable that the issues in a patent case are subject to summary judgment.

### B. *Standard of Review*

In reviewing a district court's grant of summary judgment in a patent case, this court must review the record, to the extent presented to us by the parties, and essentially determine for itself whether the evidence is genuinely conflicting on material issues of fact and, if not, whether the movant is entitled to judgment on those facts.

■■■ In its brief, LAG repeatedly asserts that the district court here made "findings of fact" which are clearly erroneous. Because the district court spoke of "findings of fact" supporting its judgment, LAG apparently believes that the court must have weighed evidence and resolved a genuine issue of fact. That interpretation of the court's order is unwarranted. It is common practice for a district court, after a *full trial* of a case, to include in its statement of "Findings of Fact," required by Fed.R.Civ.P. 52, the facts in a case which are *not* disputed as well as those which the court resolved on the basis of conflicting evidence. A court's "findings of fact" after a trial must be viewed simply as a statement of the facts, some of which were disputed, some not, which support its ultimate conclusions. The district court here was exemplary in its statements of the standard for the grant of summary judgment. With respect to the facts, the court "found" only that "there is no bona fide dispute of material fact." Its full statement of the facts on which it relied has been of great assistance to this court.[2]

■■■ In any event, an appellate court does not review a district court's "findings" of fact underlying summary judgment under the clearly erroneous standard of Rule 52. An appellant's burden is not so great as LAG believes. To overturn summary judgment, LAG need only show that one or more of the facts on which the

---

2. *See Anderson*, 477 U.S. at 250 & n. 6, 106 S.Ct. at 2511 & n. 6 ("There is no requirement that the trial judge make findings of fact" in ruling on a summary judgment motion; "[i]n many cases, however, findings are extremely helpful to a reviewing court.").

district court relied was "genuinely in dispute," as that phrase is interpreted in *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, and was material to the judgment.

 One matter raised by LAG merits only brief comments. LAG asserts that the district court, unskilled in the art of shoe design, was legally unable to resolve key, factual disputes on patent validity without the testimony of a qualified expert in that field. That argument is wholly meritless. First, the court "resolved" no factual issue on summary judgment. Second, LAG mistakenly asserts that validity is a question of fact. Validity is a question of law. *See Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966); *Petersen,* 740 F.2d at 1548, 222 USPQ at 567. Third, a judge may decide the legal issue of validity unaided by expert opinion. *See Petersen,* 740 F.2d at 1547–48, 222 USPQ at 567 (expert testimony "may" be "helpful"); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1270, 229 USPQ 805, 811 (Fed.Cir.1986) (argument expert testimony is required "borders on the frivolous"), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987).

### III

### VALIDITY OF '420 AND '301 DESIGN PATENTS

A patent is presumed valid. 35 U.S.C. § 282 (1982). In an infringement action, it is not part of a patent owner's initial burden of going forward with proof of its case to submit evidence supporting validity. Rather, the burden is first on a challenger to introduce evidence which raises the issue of invalidity. Further, a challenger must establish facts, by clear and convincing evidence, which persuasively lead to the conclusion of invalidity. *See, e.g., Perkin–Elmer Corp. v. Computervision Corp.,* 732 F.2d 888, 894, 221 USPQ 669, 674 (Fed. Cir.), *cert. denied,* 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984). Thus, "[a challenger's] silence leaves untouched at this stage what the statute presumes, namely, that [the] patent is valid." *Roper Corp. v. Litton Sys., Inc.,* 757 F.2d 1266, 1270, 225 USPQ 345, 347 (Fed.Cir.1985) (footnote omitted).

 With this understanding of the parties' obligations, LAG's argument that Avia unfairly waited for rebuttal to present its evidence regarding validity clearly fails. Avia had no obligation to introduce any evidence initially on validity. Such evidence was required only in response to LAG's evidence. *See Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1534, 218 USPQ 871, 875 (Fed.Cir.1983).

 Where a challenger does put in evidence disputing validity, the presumption of validity is neither eliminated nor undermined by the challenger's evidence, as LAG argues. This is so because the presumption is a procedural device, which assigns the burden of going forward as well as the burden of proof of facts to the challenger. *See ACS Hosp. Sys., Inc. v. Montefiore Hosp.,* 732 F.2d 1572, 1574–75, 221 USPQ 929, 930–31 (Fed.Cir.1984); *Stratoflex,* 713 F.2d at 1534, 218 USPQ at 875–76. Moreover, the presumption is one of law, not fact, and does not constitute "evidence" to be weighed against a challenger's evidence. Nevertheless, a patent having issued, the challenger bears the burden of persuasion that the established facts lead to a conclusion of invalidity.

The patents in suit are design patents. Under 35 U.S.C. § 171 (1982), a patent may be obtained on the design of an article of manufacture which is "new, original and ornamental" and "nonobvious" within the meaning of section 103, which is incorporated by reference into section 171. LAG attacks the validity of the patents for the subject designs covering parts of shoes on the grounds (1) that the designs are primarily functional rather than ornamental and (2) that the designs would have been obvious from the prior art.

### A. *Ornamental versus Functional Designs*

We dispose first of LAG's argument that the record shows genuine issues of material fact with respect to whether the subject designs are ornamental within the meaning of section 171. LAG points only to conclusory, conflicting statements in affidavits, which create no genuine issue for trial, and

to evidence of prior art references, none of which is in dispute. LAG's arguments are, thus, misfocused. Rather than arguing that there is a genuine issue of fact, in substance its arguments are that Avia was not entitled to judgment on the basis of the facts established by the record evidence.

 LAG correctly asserts that if a patented design is "primarily functional," rather than primarily ornamental, the patent is invalid. *See Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238, 231 USPQ 774, 777 (Fed.Cir.1986). When function dictates a design, protection would not promote the decorative arts, a purpose of the design patent statute. *See* 1 D. Chisum, *Patents* § 1.04[2] at 1–194.1 to 1.195 (1986). There is no dispute that shoes are functional and that certain features of the shoe designs in issue perform functions. However, a distinction exists between the functionality of an article or features thereof and the functionality of the particular design of such article or features thereof that perform a function. Were that not true, it would not be possible to obtain a design patent on a utilitarian article of manufacture, *see, e.g., Pacific Furniture Mfg. Co. v. Preview Furniture Corp.*, 800 F.2d 1111, 231 USPQ 67 (Fed.Cir.1986) (design patent for chairs), or to obtain both design and utility patents on the same article, *see, e.g., Carman Indus., Inc. v. Wahl*, 724 F.2d 932, 938–39, 220 USPQ 481, 486–87 (Fed.Cir.1983); *In re Dubois & Will*, 46 C.C.P.A. 744, 262 F.2d 88, 90, 120 USPQ 198, 200 (1958).

With respect to functionality of the design of the '301 patent, the court stated:

[LAG] has taken each little aspect of the upper and pointed out that many of the aspects or features of the upper have a function. Even if, arguendo, true that would not make the design primarily functional. If the functional aspect or purpose could be accomplished in many other ways that [sic] is involved in this very design, that fact is enough to destroy the claim that this design is primarily functional. There are many things in the ['301] patent on the upper which are clearly ornamental and nonfunctional such as the location of perforations and how they are arranged, and the stitching and how it's arranged, and the coloration of elements between black and white colors.

The overall aesthetics of the various components and the way they are combined are quite important and are not functional. They are purely aesthetic. . . .

*Pensa, Inc.*, 4 USPQ2d at 1019.

 On the design of the '420 patent, the court made a similar analysis of various features and concluded:

But every function which [LAG] says is achieved by one of the component aspects of the sole in this case could be and has been achieved by different components. And that is a very persuasive rationale for the holding that the design overall is not primarily functional. Moreover, there is no function which even defendant assigns to the swirl effect around the pivot point, which swirl effect is a very important aspect of the design.

. . . .

. . . [T]his is a unique and pleasing design and it's [sic] patentability in my view is not offset or destroyed by the fact that the utility patent is utilized and incorporated in this aesthetically pleasing design.

Plaintiff has given us evidence of other shoes that incorporate the utility patent and its concavity—others of its own shoes—but with a totally different design, and has thus established that the utility patent does not make the design patent invalid in this case.

*Pensa, Inc.*, 4 USPQ2d at 1019–20. We agree that the designs in suit have not persuasively been shown to be functional and that no genuine issue of material fact is present with respect to this issue.

**B.** *Obviousness*

 Design patents must meet a nonobvious requirement identical to that applicable to utility patents. Accordingly, 35 U.S.C. § 103 (1982) applies to determine whether the designs of the '420 and '301 patents would have been obvious to one of ordinary skill in the art. *See, e.g., Litton Sys., Inc.*

*v. Whirlpool Corp.*, 728 F.2d 1423, 1440–41, 221 USPQ 97, 108 (Fed.Cir.1984); *In re Nalbandian*, 661 F.2d 1214, 1215, 211 USPQ 782, 783 (CCPA 1981); 1 D. Chisum, § 1.04[2] at 1–198. The court found no genuine issue of material fact was raised with respect to the four factors to be considered in determining obviousness: the scope and content of the prior art, the differences between the prior art and claims at issue, the level of ordinary skill in the art when the invention was made, and secondary indicia, such as commercial success and copying. *See Graham*, 383 U.S. at 17, 86 S.Ct. at 693; *Litton Sys.*, 728 F.2d at 1441, 221 USPQ at 108.

LAG attempts to create a dispute as to the content of the prior art through the court's statement that "all of the shoes referred to as prior art in the record below had come out after the Model 750 [commercial embodiment of the '420 patent] was on the market." LAG mischaracterizes the court's statement. The court restricted that statement to shoes *mentioned by inventor Tong* in deposition answers. *Pensa, Inc.*, 4 USPQ2d at 1020. The court also noted that LAG's deposition questions were "so generally worded as to be almost meaningless." *Id.* at 1024. Neither LAG's failure to ask specific questions during discovery nor its mischaracterization of the court's decision can create a genuine issue of fact.

■■■ With respect to a design, obviousness is determined from the vantage of "the designer of ordinary capability who designs articles of the type presented in the application." *In re Nalbandian*, 661 F.2d at 1216, 211 USPQ at 784. LAG acknowledges that standard, but asserts that the court is required to defer to its expert testimony. As we have stated, however, an expert's opinion on the legal conclusion of obviousness is neither necessary nor controlling. *See, e.g., Petersen*, 740 F.2d at 1547–48, 222 USPQ at 567.

■■■ Further, a conflict in the legal opinions of experts creates no dispute of fact. *See Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1572, 220 USPQ 584, 589 (Fed.Cir.1984). LAG argues that the designs would have been obvious because they are "traditional ones consisting of features old in the art." That some components of Avia's designs exist in prior art references is not determinative. "[I]f the combined teachings suggest only components of the claimed design but not its overall appearance, a rejection under section 103 is inappropriate." *In re Cho*, 813 F.2d 378, 382, 1 USPQ2d 1662, 1663 (Fed.Cir.1987). There is no evidence that the overall appearances of the '420 and '301 designs would have been suggested to ordinary shoe designers by the references.

■■■ LAG does not contest the commercial success of Avia's shoes manufactured according to the patented designs, but argues the success is attributable to factors other than the designs themselves, such as advertising. Although commercial success is relevant only if a nexus is proven between the success of the patented product and the merits of the claimed invention, *see, e.g., Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1575, 222 USPQ 744, 746 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985), Avia did present evidence tending to prove nexus and LAG's conclusory statements to the contrary fail to create a genuine factual dispute. In addition, the trial court referred to the accused products as "copies" of the patented designs. *Pensa, Inc.*, 4 USPQ2d at 1021. Copying is additional evidence of nonobviousness. *See, e.g., Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000, 228 USPQ 562, 565 (Fed.Cir.), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). LAG's conclusory characterization of the evidence as "speculative" is insufficient to create a genuine factual dispute.

■■■ On the basis of its evaluation of the four factors outlined above, the court held that the ordinary designer would not have found the '420 or '301 designs, considered as whole designs, obvious in light of the differences between the prior art and the claimed designs. We agree. No genuine issue of material fact or error of law has been shown in the district court's ruling.

## IV

## PATENT INFRINGEMENT

 The Supreme Court established the test for determining infringement of a design patent in *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 20 L.Ed. 731 (1871):

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Id.* at 528. In addition to overall similarity of designs, "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." *Shelcore, Inc. v. Durham Indus., Inc.*, 745 F.2d 621, 628 n. 16, 223 USPQ 584, 590 n. 17 (Fed.Cir.1984); *Litton Sys.*, 728 F.2d at 1444, 221 USPQ at 109. Absent the presence of the novel features in the accused products, a patented design has not been appropriated.

The district court correctly applied the above test for infringement of the subject patented designs, stating:

> I find them as to the ['420] sole virtually identical. In each instance [LAG has] appropriated the novelty of the patented article. One needs only to look at the two soles to see that the infringement exists. But if it is necessary to particularize it we have in the incriminated or accused sole copying of the swirl effect, copying of the separate coloration and configuration of the pivot point, though without the red dot. And we have in the accused sole the whole general appearance, which is almost a direct copy of the patented sole.
>
> As to the ['301] upper, in my view the same language could be used. It is almost a direct copy. It is much more than the substantially-the-same standard.

*Pensa, Inc.*, 4 USPQ2d at 1021. Thus, the court found that LAG's shoes had overall similarity to the patented designs and incorporated the novel features thereof as well. For the '420 patent, those features included the swirl effect and the pivot point; for the '301 patent, the novelty consists, in light of the court's analysis of validity, of the combination of saddle, eyestay, and perforations.

LAG asserts that a patent owner has the burden to prove infringement by preponderant evidence, *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1187, 5 USPQ2d 1625, 1625 (Fed.Cir.1988), and that Avia failed to meet that burden. On a motion for summary judgment, however, the question is not the "weight" of the evidence, but the presence of a genuine issue of material fact. A patent owner must, of course, present sufficient evidence to make a *prima facie* case. Here, besides its patents and the accused shoes, Avia presented evidence in the form of an expert's declaration analyzing infringement and deposition testimony of LAG's president, in which he confused LAG's Thrasher and Avia's Model 750. In addition, the court performed its own comparison of LAG's shoes to the patented designs. LAG merely challenges the "weight" accorded the expert's declaration and the ultimate finding of infringement. Neither argument raises a genuine issue of material fact which requires a trial.

 Finally, LAG points to undisputed evidence that Avia's Model 750 shoe, made in accordance with the patent, and LAG's accused Models 584 and 588, are intended for different customers. The former are for tennis players; the latter are for children. That fact, per LAG, renders the products not "substantially the same," as necessary under *Gorham.* LAG's understanding of *Gorham* is grossly in error. To find infringement, the accused shoes need only appropriate a patentee's protected design, not a patentee's market as well. *See Unette Corp. v. Unit Pack Co.*, 785 F.2d 1026, 1028, 228 USPQ 933, 934 (Fed.Cir.1986). The products of the parties need not be directly competitive; indeed, an infringer is liable even when the patent owner puts out no product. *A fortiori*, infringement is not avoided by selling to a different class of purchasers than the patentee.

Having considered the above and all other arguments of appellant, LAG, we are

unpersuaded of error in the district court's judgment of infringement.

## V

## WILLFULNESS

■ The patent statute authorizes the court to "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284 (1982). One purpose of an increased damage award is to deter willful patent infringement by punishing the willful infringer. 5 D. Chisum, at § 20.03[4][b][iii]. The question of whether an infringement is willful, justifying an increased award, is one of fact. *See Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 628, 225 USPQ 634, 644 (Fed.Cir.), *cert. dismissed*, 474 U.S. 976, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985).

The facts at issue are undisputed. LAG ordered the Thrasher and Hi–Top sneakers, designed and manufactured in Taiwan by Sheng Chun, in February 1986. In early June 1986, Avia sent LAG a letter advising that a design patent (the '420) would soon issue covering Avia's Model 750 shoe and that LAG's Model 584 would infringe that patent. LAG immediately, on June 9, 1986, sent Sheng Chun a facsimile transmission stating: "Urgently need pattern corrections on Style 584 as to avoid infringement on AVIA Model 750. Sending these fax ideas for possible solutions." When Sheng Chun indicated pattern modifications were impossible, LAG placed its final order on June 19, 1986. The '420 patent issued on July 1, 1986; the '301 patent, on December 23, 1986.

The district court outlined the undisputed facts it considered critical: (1) LAG had notice of Avia's patent, (2) LAG's correspondence with Sheng Chun noted the risks its sales incurred and the copying aspect of its product, (3) LAG continued sales despite notice, and (4) LAG did not seek advice from counsel. Based on those facts, the court found LAG's infringement willful.

LAG contends that summary judgment is inappropriate on the issue of willfulness, because it must have an opportunity to explain its motive and intent and to establish its exercise of due care. That contention is without merit because LAG did have such an opportunity and failed to avail itself of that opportunity.

"It is by now well settled that where a potential infringer has actual notice of another's patent rights he has an affirmative duty of due care." *Rolls–Royce, Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109, 231 USPQ 185, 191 (Fed.Cir.1986). The question is whether the record before the court establishes that LAG breached that duty. *See Underwater Devices, Inc. v. Morrison–Knudsen Co.*, 717 F.2d 1380, 1390, 219 USPQ 569, 577 (Fed.Cir.1983).

■ The duty of due care normally requires the potential infringer to obtain competent legal advice of counsel before infringing or continuing to infringe. *See Rolls–Royce*, 800 F.2d at 1109, 231 USPQ at 191. Although LAG's failure to obtain such advice is not determinative, it is one factor supporting a finding of willfulness. *See Kloster Speedsteel AB v. Crucible, Inc.*, 793 F.2d 1565, 1579, 230 USPQ 81, 90 (Fed.Cir.1986), *modified in part*, 231 USPQ 160 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987). Moreover, LAG "intentionally undertook the risk of importing infringing products," engaging in "[a]n 'aggressive strategy' unsupported by any competent advice of counsel," which is exactly "the type of activity the reference in the patent law to increased damages seeks to prevent." *Id.*

■ LAG's contention that infringement could not be willful because the patents issued after LAG placed its last order is unavailing. "The fact that [an infringer] may have started its infringement before the patents issued (or before [it was] aware of the patents) does not bar an award of increased damages or attorney fees." *Pacific Furniture*, 800 F.2d at 1114–15 n. 9, 231 USPQ at 69 n. 9; *see also Shiley, Inc. v. Bentley Laboratories, Inc.*, 794 F.2d 1561, 1568, 230 USPQ 112, 115 (Fed.Cir. 1986). LAG continued to sell the infringing shoes after the patent issued, well after it had notice the patent was pending for a *particular* design, and even after this suit for infringement was filed. By such conduct, LAG intentionally accepted the

risk of infringement. Indeed, in view of the statements in LAG's communique to the manufacturer in Taiwan requesting design changes to avoid infringement, the conclusion of willfulness appears most reasonable and is affirmed.

## VI

## ATTORNEY FEES

The patent statute allows the court "in exceptional circumstances" to award "reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (1982). Relying on its holding that the infringement was willful, the district court granted such an award in this case, the amount of which has been reserved for determination. LAG urges that the district court abused its discretion in making the award, suggesting, in effect, that more egregious conduct than willful infringement is necessary to hold a case exceptional. To support its position, LAG relies on decisions of other courts.

 Although an award of attorney fees, because discretionary, does not automatically follow from the willfulness of an infringement, *Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1126, 2 USPQ2d 1915, 1919 (Fed.Cir.1987) ("A finding of willfulness does not always lead to the award of ... attorney fees."); *see also Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582, 226 USPQ 821, 824 (Fed.Cir. 1985); *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*, 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986); 5 D. Chisum, § 20.03[4][c] at 20–193, our cases uniformly indicate that the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case "exceptional" for purposes of awarding attorney fees to the prevailing patent owner. *See, e.g., Bott v. Four Star Corp.*, 807 F.2d 1567, 1574, 1 USPQ2d 1210, 1215 (Fed.Cir.1986) ("In view of the finding of willful infringement, the discretionary award of attorney fees was entirely proper."); *Shiley, Inc.*, 794 F.2d at 1568, 230 USPQ at 115 (trial court awarded double damages and attorney fees on same basis, finding of willful infringement); *Kloster Speedsteel*, 793 F.2d at 1580, 230

USPQ at 91 ("Willfulness of infringement ... may make the case so exceptional as to warrant attorney fees under § 285."); *Great Northern Corp. v. Davis Core & Pad Co.*, 782 F.2d 159, 167, 228 USPQ 356, 360 (Fed.Cir.1986) (same); *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657, 225 USPQ 985, 990 (Fed. Cir.) ("Having found this to be a case of willful infringement, the district court's discretionary award of attorney fees and costs ... was proper."), *cert. denied*, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985); *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1547–48, 221 USPQ 1, 8–9 (Fed.Cir.1984) (same); *see also* 5 D. Chisum, § 20.03[4][c] at 20–185, 20–192 to –193; *cf. S.C. Johnson*, 781 F.2d at 201, 228 USPQ at 369 (when trial court finds willful infringement but declines to find case exceptional, without articulating reasons, case remanded for clarification). In this case, the willfulness of the infringement provided a sufficient basis for a section 285 attorney fee award to the prevailing patent owner. Accordingly, LAG's argument that the district court abused its discretion in awarding Avia attorney fees based on the willfulness of the infringement is rejected.

## VII

## CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment to Avia in all respects.

AFFIRMED.