907 F.2d 159
 16 U.S.P.Q.2d 1401
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
NUCLEONICS DEVELOPMENT COMPANY d/b/a/ NDC Systems, Plaintiff-Appellee,
v.
George W. SEYMOUR, Defendant-Appellant.
 No. 90-1114.
 United States Court of Appeals, Federal Circuit.
 June 25, 1990.
 
 Before MARKEY, Chief Judge, RICH, Circuit Judge and CARL A. MUECKE, Senior District Judge.*
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Seymour appeals from the September 29, 1989, Order of the United States District Court for the Central District of California, Civil Action No. 88,3393, granting appellee Nucleonics Development Company's (Nucleonics') motion for summary judgment of non-infringement of Seymour's patent No. 4,207,141 ('141). Seymour also seeks review of the district court's November 15, 1989, order denying his motion to transfer the action, for lack of proper venue, to the Southern District of Georgia where he resides. We affirm-in-part, vacate-in-part, and remand.
 
 OPINION
 A. Jurisdiction and Venue
 
 2
 Seymour argues that the district court improperly exercised personal jurisdiction over him. However, we are of the opinion that Seymour's contacts with California are sufficient to satisfy the three-part test set forth in Kransco Mfg., Inc. v. Markwitz, 656 F.2d 1376, 1378 (9th Cir.1981).
 
 
 3
 Seymour's contacts with California were not, as he urges in his brief, limited to the infringement letters sent to Nucleonics in California. It was Seymour who sought out Nucleonics in California for the purpose of having it adapt its existing nuclear radiation backscatter gauge (backscatter gauge) for use in the process he had invented. The resulting business relationship which existed for a time between Seymour and Nucleonics, which ultimately soured, is what led to the present suit. Thus, not only has Seymour purposefully availed himself of the privilege of conducting activities in California, but Nucleonics' claim in the action, that it cannot be held liable to Seymour for selling backscatter gauges to pulp mills, arises out of its activities in California. We consider the exercise of jurisdiction over Seymour in California to be fair. The fact that it was Seymour's letter to a pulp mill operator in Mississippi which finally precipitated this suit is not, in our opinion, relevant to the issue of personal jurisdiction.
 
 
 4
 We also find no error in the district court's conclusion that venue was proper in California in this declaratory judgment action. First, it was the letters sent by Seymour to California which gave rise to the reasonable apprehension of suit by Nucleonics. In addition, the business relationship between Seymour and Nucleonics existed primarily in California. We do not consider the single overt threat of suit for infringement to a pulp mill operator in Mississippi if it used Nucleonics' equipment to be sufficient to conclude that the action arose in Mississippi. Under these facts, since the threat to Nucleonics so clearly arose in California, we see no need to focus on the convenience of the parties in the manner set forth in LeRoy v. Western United Corp., 443 U.S. 173, 185 (1979).
 
 
 5
 The District Court's denial of Seymour's motion to dismiss for lack of personal jurisdiction and improper venue or for transfer is affirmed.
 
 B. Infringement
 
 6
 The sole issue on this point is whether summary judgment was proper, not the merits of the arguments pro and con on infringement. This case is unusual in that the patentee's theory of infringement is yet to be articulated, so far as we have seen. It is enough to discuss claim 1, as all other claims are dependent. The claim is directed to a process. Nucleonics carries out no process, it sells instruments. The process would be carried out only in a paper mill. Paper mills are the potential customers of Nucleonics. Its purpose in this suit was to obtain a declaration that under no circumstances could the use of its backscatter gauge in controlling the shower of water in the washing stage of the process of making paper from wood pulp, whatever Seymour's theory of infringement might be, be considered an infringement. It obtained a declaratory judgment to that effect on motion for summary judgment.
 
 
 7
 Our conclusion is that this was not a proper case for summary judgment because there are several disputed questions of material fact.
 
 
 8
 In reviewing the district court's grant of summary judgment, this court reviews de novo the conclusion that there was no issue of material fact and that the moving party was entitled to judgment as a matter of law. Avia Group Intl. Inc. v. L.A. Gear California Inc., 853 F.2d 1557, 1561, 7 USPQ2d 1548, 1550 (Fed.Cir.1988). The ultimate issue of infringement is a question of fact, determined after the legal question of claim interpretation has been settled, but there may be underlying questions of fact involved which must be settled before a claim can be interpreted. Id. On a motion for summary judgment, the evidence must be viewed in a light most favorable to the nonmovant and all inferences must be drawn in the nonmovant's favor. Id. We are of the opinion that that was not done by the district court.
 
 
 9
 The sole question with respect to possible infringement is one of the construction of claim 1. The issue of potential literal infringement turns on the phrase stating that
 
 
 10
 ... the liquid content per unit area of the slurry mat is determined by directly measuring the dielectric properties of the slurry mat [emphasis ours].
 
 
 11
 There is a disputed fact issue about what this means and it certainly is material. It is disputed what the term "dielectric properties" in this context would mean to one skilled in the art and it is disputed whether Nucleonics' backscatter gauge "measures" dielectric properties.
 
 
 12
 Nucleonics' submitted findings which the district court adopted without comment improperly focus on the phrase "liquid content per unit area of the slurry mat is determined" and conclude that this language excludes the use of a backscatter gauge. Even though the specification generally refers to a backscatter gauge as a total mass measurement device, column 9, lines 22-41, seems to indicate that a backscatter gauge can be used to measure, or at least facilitate the measurement of, water content. There is evidence (Exhibit 172) that Nucleonics wrote a paper mill offering to sell its Series 200 gauge "to measure water content on your pulp washing operation." (Joint Appendix 1191.) Cancelled claim 26, which Nucleonics argues was directed to the use of a backscatter gauge, clearly states that "liquid content ... is determined by measuring total mass." Thus, even on this point there is an underlying factual issue in claim construction which should not be decided on summary judgment.
 
 
 13
 The meaning of technical terms can be, and here is, a highly material factual issue requiring expert testimony, Howes v. Medical Components Inc., 814 F.2d 638, 643, 2 USPQ2d 1271, 1273 (Fed.Cir.1987), "dielectric properties" in the critical phrase, supra, being such a term, the meaning of which is hotly disputed by the parties with at least some evidence going both ways even at this stage of the case. More is needed to resolve the issue. If there existed a clear definition of the term in either the specification or the prosecution history, the issue might be resolvable but what is needed is evidence of what it would mean to one skilled in the art. The term is used only once in the specification (excluding claims) in col. 3, lines 64-65, with reference to the microwave cavity perturbation technique. As for dispute about this factual issue, Seymour says the term is "generic" and Nucleonics urges it as a basis for limiting claim 1 to capacitative measurement. The more we have studied the case, the more we have become convinced that this dispute, which is the heart of the matter, cannot be resolved on the present record. This alone is enough to preclude summary judgment, but we find other similar factual issues: (1) Whether "measuring the dielectric properties" (claim 1) and "measuring the total mass" (cancelled claim 26) are not equally for the sole purpose of enabling mat liquid content to be "determined." (2) Whether Nucleonics' Model 210 Pulp Washer Gauge does not measure "dielectric properties" in the course of "measuring the total mass per unit area." (3) Did not the examiner view what is now claim 1 as "generic" to all three techniques disclosed in Seymour's patent (issued some 5 years before he contacted Nucleonics)? He so indicated at pages 59 and 71 of the file history. (4) Does the "dichotomy" theory of file history interpretation constructed by Nucleonics' attorneys rest on a foundation of rock or sand and is there another possible theory equally tenable which leads to a different result? (5) What was the real reason claim 26 was cancelled?
 
 
 14
 The existence of these factual issues requires that we hold that summary judgment was improper.
 
 
 15
 Nucleonics' 32-page document entitled "NDC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 4,207,141" calls for brief comment. Twenty-four pages thereof constitute allegedly "Uncontroverted Facts" to the number of 51. The document as a whole is simply a parallel of Nucleonics' brief below, containing all of its legal theories and arguments. Though there are some incontrovertible facts in it, many of the statements paraded as facts are, and were below, flatly controverted by Seymour, and Nucleonics' attorneys' "dichotomy" thesis of file history interpretation is fully included as "fact," which it is not. We cannot accept it as a statement of uncontroverted facts, notwithstanding its endorsement by the district court. Much of it is simple partisan interpretation, some is contention, and some of it is plain unsupported guesswork.
 
 
 16
 We therefore vacate the district court's summary judgment of non-infringement and remand the case for further proceedings.
 
 COSTS
 
 17
 Each party to bear its own costs.
 
 
 
 *
 Judge Carl A. Muecke of the District of Arizona, sitting by designation