26 F.3d 138
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
SWEDE INDUSTRIES, INC., Plaintiff-Appellant,
v.
ZEBCO CORPORATION and the Brunswick Corporation, Defendants-Appellees.
 No. 93-1403.
 United States Court of Appeals, Federal Circuit.
 April 12, 1994.
 
 Before MAYER, RADER, and SCHALL, Circuit Judges.
 DECISION
 RADER, Circuit Judge.
 
 
 1
 Swede Industries, Inc. (Swede) sued Zebco Corporation and Brunswick Corporation (Zebco) for infringement of Swede's utility and design patent. Only the design patent--U.S. Design Patent No. 307,621 (the '621 patent)--is at issue in this appeal. On summary judgment, the United States District Court for the Northern District of Oklahoma determined that Zebco did not infringe the '621 patent. Because the district court failed to correctly apply the appropriate tests, this court vacates and remands.
 
 BACKGROUND
 
 2
 The '621 patent claims an ornamental design for a streamlined fishing reel. The inventor engaged Baugh Designs to formulate the final design concepts for the patent. Filed in July 1987, the patent application issued May 1, 1990, with an assignment to Swede. Swede utilized the '621 design in a reel introduced to the public at a trade show in January, 1990.
 
 
 3
 In October 1987, without the '621 inventor's knowledge, an employee of Baugh Designs began work for another company and provided his portfolio to Zebco's reel designer. The employee's portfolio contained drawings of fishing reel design concepts that he prepared while at Baugh Designs. Thus, Zebco knew of design concepts under consideration by Swede as early as 1987 and learned of the final design at the January 1990 trade show.
 
 
 4
 In January 1990, Zebco filed for a design patent on streamlined fishing reels known as Bullet models. Two years later, an examiner at the United States Patent and Trademark Office (PTO) issued an initial rejection of Zebco's design based upon two prior fishing reel patents. To reach this rejection, the examiner combined the back end of a cylindrical reel (the Hammer design patent, dated 1959) with the anterior section of a rectangular reel (the Johnson utility patent, dated 1960). The rejection lacked any description of how to fit together rectangular and cylindrical body sections. Additionally, it did not note any motivation for making the combination. Zebco did not respond to the examiner's rejection, and thus abandoned the application.
 
 
 5
 In June 1990, Zebco began selling its Bullet model fishing reel. Swede brought suit in district court for patent infringement. The parties both moved for summary judgment on the design patent. In connection with the motions, Zebco cited the PTO's rejection to show that the Bullet model was in the public domain more than a year before the filing of Swede's design patent application. Zebco argued that it was in the public domain because it was an obvious variation of the Hammer/Johnson combination which was in the public domain. The district court deferred to the PTO rejection, and moreover, concluded that the Swede reel bore greater similarity to the prior art invoked to reject the Bullet model than did the Bullet reel. The district court concluded, as a matter of law, that the granted design patentee could not successfully charge infringement against the denied applicant. Therefore, the district court granted Zebco's motion and held the patent not infringed. Swede appeals.
 
 DISCUSSION
 
 6
 In reviewing a grant of summary judgment, this court uses a de novo standard and resolves all inferences in favor of the non-movant. Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc., 853 F.2d 1557, 1560, 7 USPQ2d 1548, 1551 (Fed.Cir.1988). Thus, this court "determine[s] for itself whether the evidence is genuinely conflicting on material issues of fact and, if not, whether the movant is entitled to judgment on those facts." Id. This court has jurisdiction over this appeal pursuant to the "Gillespie rule," established by the Supreme Court in Gillespie v. United States Steel Corp., 379 U.S. 148 (1964). See Tenneco Resins, Inc. v. Reeves Bros., Inc., 736 F.2d 1508, 1510-12, 222 USPQ 276, 278 (Fed.Cir.1984).
 
 Obviousness
 
 7
 Although Zebco did not seek summary judgment on invalidity grounds, the district court opinion appears to hold that the patent is invalid. Invalidity would render the infringement determination moot; therefore, this court considers the obviousness of the designs in question.
 
 
 8
 As in utility patent cases, Graham v. John Deere Co., 383 U.S. 1 (1966), governs the determination of obviousness in design patent cases. Avia Group, 853 F.2d at 1563-64. Thus, a proper obviousness analysis examines the scope and content of the prior art, the differences between the prior art and the claims, the level of ordinary skill in the art, and objective criteria bearing on obviousness. Id. at 1564. The level of ordinary skill in design cases is "a designer of ordinary skill who designs articles of the type involved." In re Carter, 673 F.2d 1378, 1380, 213 USPQ 625, 626 (CCPA 1982).
 
 
 9
 In the context of design patents, an obviousness analysis examines whether the teachings of the prior art suggest the overall appearance of the claimed design. In re Sung Nam Cho, 813 F.2d 378, 382, 1 USPQ2d 1662, 1663-64 (Fed.Cir.1987). In particular, if the combined teachings of the prior art suggest only components, not the overall appearance, of the claimed design, section 103 does not operate to render the claims obvious. Id. Thus, as for utility patents, the prior art references must motivate one of ordinary skill in the art to make the claimed combination. Id. In determining motivation to combine, the relevant question is whether the prior art designs are so closely related that the appearance of specific ornamental features in one reference actually suggest the application of those features in the other design. In re Glavas, 230 F.2d 447, 450, 109 USPQ 50, 52 (CCPA 1956).
 
 
 10
 In Glavas this court's predecessor reversed a determination of obviousness for a design patent application because, even though the prior art contained all component features of the claimed design, the prior art references did not suggest the combination. Id. at 451. This court reiterated this principle in In re Harvey, 12 F.3d 1061, 1063, 29 USPQ2d 1206, 1208 (Fed.Cir.1993). A patented ornamental design has use only for its visual appearance. Consequently, "in considering prior art references for purposes of determining patentability of ornamental designs, the focus must be on appearances and not uses." Id. This court also clarified that any modification to the prior art designs in applying the obviousness test cannot be more than de minimis in nature. Id. at 1065-66. Moreover, any de minimis modifications necessary to reach an obviousness conclusion must not relate to the overall aesthetic appearance of the design. Id.; see also Carter, 673 F.2d at 1380.
 
 
 11
 The district court erred in deferring to the Bullet rejection and reaching its conclusion of obviousness through an erroneous estoppel argument. The district court reasoned that the PTO's preliminary rejection of the Zebco design sufficed to estop Swede from asserting the nonobviousness of the '621 patent. In Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 333 (1971), the Supreme Court held that a party could be estopped from relitigating certain issues due to its prior "full and fair chance to litigate" those issues. This court applies the Blonder-Tongue principle when:
 
 
 12
 (1) the issue is identical to the one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) [the party charged] had a full and fair opportunity to litigate the issue in the first action.
 
 
 13
 A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 702, 218 USPQ 965, 967 (Fed.Cir.1983), cert. denied, 464 U.S. 1042 (1984).
 
 
 14
 This Blonder-Tongue analysis does not estop Swede for several reasons. First, Swede did not participate in the PTO rejection of the Zebco design application. Indeed, prosecution before the PTO is purely ex parte. Moreover, the issue of the nonobviousness of the '621 design was not before the PTO in the examination of the Zebco design. Therefore, the second and fourth prongs of the A.B. Dick enunciation of the Blonder-Tongue test do not apply to this case. The district court erred in estopping Swede from asserting the nonobviousness of the '621 design on the basis of the PTO's preliminary rejection of the later Zebco design.
 
 
 15
 Moreover, the examiner's preliminary rejection on its face does not conclusively show what might have been the results of a full examination procedure on the Zebco design. Zebco attempted no response to the examiner's first rejection. The examiner rejected Zebco on the basis of Hammer and Johnson as discussed earlier. Because Zebco abandoned its application at a preliminary stage,[1] the record does not show whether the examiner considered the absence of motivation to combine the two references or the need for substantial modification to reach an obviousness conclusion. Thus, in the sense required for collateral estoppel, the issue of obviousness of the '621 patent was not actually litigated in the office action on the Zebco design. Accordingly, rejection of the Zebco application does not determine obviousness of the Swede design.
 
 
 16
 The district court erred in its application of the test for obviousness of this design patent. The record discloses no motivation in the prior art to combine the posterior portion of Hammer's cylindrical reel with the anterior portion of Johnson's rectangular reel.
 
 
 17
 In order to derive a design from the combination of Hammer and Johnson sufficient to render the '621 patent obvious, one of ordinary skill in the art would need to make modifications in the prior art. An artisan of ordinary skill would have to modify a rectangular structure to accommodate a cylindrical one. Figure 1 of Johnson's rectangular mechanism shows an extended front of the reel. Although the figure 1 depiction could be mistaken for a cylindrical design, figure 4 of the Johnson patent--a cross-section view--clarifies that the anterior portion of the Johnson reel is rectangular.[2] Thus, in order to combine Hammer's cylindrical reel with Johnson's rectangular reel, an artisan would need to make considerable modifications.
 
 
 18
 An artisan of ordinary skill would further need to incorporate Hammer's drag adjustment into the streamlined body, rather than in the exposed vertical position taught by Hammer. Finally, the modification would need to drop Johnson's sharp angular front. These modifications, among the others necessary to render the '621 patent obvious by combining Hammer and Johnson, are hardly de minimis. Moreover, these proposed modifications definitely relate to overall aesthetic appearance.
 
 
 19
 Without the district court's erroneous application of estoppel, this court must consider obviousness of the '621 patent without giving weight to the PTO action on the Zebco design. As indicated, the prior art of Hammer and Johnson does not render the Swede design obvious.
 
 Infringement
 
 20
 Gorham Co. v. White, 81 U.S. (14 Wall.) 511 (1872), sets forth the test for design patent infringement:
 
 
 21
 [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.
 
 
 22
 Id. at 528; see also FMC Corp. v. Hennessy Indus., 836 F.2d 521, 527-28, 5 USPQ2d 1272, 1277 (Fed.Cir.1987). This test focuses on substantial similarity between the accused and claimed designs from the vantage point of an ordinary observer. Moreover, the test requires the patentee to show that the accused device appropriates the features which distinguish the patent from prior art, not simply features already in the public domain. Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444, 221 USPQ 97, 109-10 (Fed.Cir.1984).
 
 
 23
 The infringement determination is factual. Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1187, 5 USPQ2d 1625, 1625 (Fed.Cir.1988). On summary judgment, a trial court may resolve the material issue of design infringement only in the absence of genuine factual disputes. Avia Group, 853 F.2d at 1561. In viewing the evidence of record, this court must resolve any inferences in favor of the nonmovant. Id.
 
 
 24
 In this case, the district court did not use the ordinary observer test to determine infringement. The district court did not decide whether an ordinary observer would purchase a Zebco reel supposing it to be the reel depicted in the '621 patent. Indeed, the issue was never even presented for summary judgement. The district court did not point to any novel features, if any, for the fishing reel depicted in the '621 design patent. The trial court did not discuss whether the Zebco Bullet reels had appropriated, or had not appropriated, those features. Without answers to these basic questions, the trial court could not properly reach a conclusion of non-infringement.
 
 
 25
 The trial court erred by focussing on the breadth of the range of equivalents requested by Swede. See Litton Sys., 728 F.2d at 1444. Absent the underlying infringement analysis, a determination of the breadth of equivalents was premature. Without record facts on (1) what novel features were depicted in the '621 patent; (2) whether those features were appropriated by the Zebco Bullet models; and (3) whether an ordinary observer would mistakenly purchase a Zebco reel thinking it to be the Swede model, the trial court lacked sufficient evidence to resolve infringement on summary judgment. To resolve the issue, this court remands for a proper infringement analysis.
 
 CONCLUSION
 
 26
 The combination of Hammer and Johnson does not render the '621 design obvious. The prior art contains no motivation to make the combination. Moreover, even if an adequate motivation existed, the required modifications to the resulting composite structure are too great to render the '621 design obvious in view of the Hammer and Johnson teachings. Finally, this court remands for a proper infringement analysis.
 
 COSTS
 
 27
 Each party shall bear its own costs.
 
 
 28
 VACATED AND REMANDED.
 
 
 
 [1]
 Zebco had little incentive to fully prosecute its design application. In the context of an impending infringement suit, the PTO rejection was perhaps as valuable to Zebco as a grant of a design patent over the Hammer and Johnson references
 
 
 [2]
 All views of the Johnson mechanism are necessary to determine what is taught by the four corners of the reference. In using the isolated figure 1 view of Johnson as prior art, the district court judge "magnified a drafting practice ... into an alleged suggestion for an ornamental design through the exercise of [impermissible] hindsight." In re Klein, 987 F.2d 1569, 1573, 26 USPQ2d 1133, 1136 (Fed.Cir.1993)