Slip Op. 01-64

# *UNITED STATES COURT OF INTERNATIONAL TRADE*

FABIL MANUFACTURING CORP.,

        Plaintiff,

        v.

THE UNITED STATES,

        Defendant.

**Before: MUSGRAVE, JUDGE**

Consol. Court No. 90-06-00268

[Plaintiff's motion for summary judgment denied and Defendant's cross-motion for summary judgment denied.]

Dated: May 30, 2001

*Law offices of Irving A. Mandel* (*Stephen R. Sosnov*) for Plaintiff.

*Stuart E. Schiffer*, Acting Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*John J. Mahon*); *Edward N. Mauer*, Office of Assistant Chief Counsel, United States Customs Service, of counsel, for Defendant.

**OPINION**

This matter is before the Court on cross-motions for summary judgment pursuant to CIT Rule 56.[1]  At issue is whether Defendant, the United States Customs Service ("Customs"), correctly classified certain entries of outerwear under item 6201.93.35.20 of the Harmonized Tariff Schedule

---

[1] These are the second motion and cross-motion for summary judgment filed in this action. The first such motions were denied because factual issues remained to be decided at trial. Fabil states that the parties agreed to pursue resolution of this matter by summary judgment once again "after meetings between the parties, the submission to the Justice Department by plaintiff of additional data, and the inability to agree on various facts." Br. in Supp. of Pl.'s Second Mot. for Summ. J. ("Pl.'s Br.") at 1.

of the United States ("HTSUS") as "Men's or boys' overcoats, carcoats, capes, cloaks, anoraks

(including ski-jackets), windbreakers and similar articles (including padded, sleeveless jackets),

. . . : Of man-made fibers: Other, Boys'" with a duty at the rate of 29.5% *ad valorem*. Plaintiff,

Fabil Manufacturing Corp. ("Fabil"), contends that the merchandise was water resistant, and as such

it should have been classified under item 6201.93.30 or 6202.93.45 HTSUS, depending on whether

it was for men/boys or women/girls, with a duty at the rate of 7.6% *ad valorem*.[2] For the reasons

which follow, the Court concludes that there remains a factual issue regarding whether the

merchandise at issue had a water resistant coating; therefore both motions must be denied.

### *Jurisdiction and Standard of Review*

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1581(a). Summary

judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." CIT Rule 56(c); *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although 28 U.S.C. § 2639(a)(1) extends a

presumption of correctness to Customs' classification decisions, this presumption "is irrelevant

where there is no factual dispute between the parties." *Rollerblade Inc. v. United States*, 112 F.3d

481, 484 (Fed Cir. 1997) (citing *Goodman Manufacturing, L.P. v. United States*, 69 F.3d 505, 508

---

[2] In its consolidated complaint, Fabil alleged that classification was proper under item 6210.40.1010 or 6210.50.20 HTSUS. *See* Consolidated Compl. ¶ 5. Alternatively it claimed classification under item 6201.93.30 or 6202.93.45 HTSUS. *See* Consolidated Compl. ¶ 6. Fabil now states that it "does not intend to pursue hereafter any of the claimed provisions set forth in paragraph 5 of its consolidated complaint." Pl.'s Br. at 2.

(Fed. Cir. 1995)); *accord Universal Electronics, Inc. v. United States*, 112 F.3d 488, 492-93 (Fed.

Cir. 1997).

*Background*

In support of its motion for summary judgment, Fabil submits a supplemental affidavit by

Bob Hammer, the Vice President of Fabil during the relevant time.  Mr. Hammer states that his

"responsibilities included designing, buying, sourcing, selling, advertising and marketing all

outerwear garments, including jackets, which were imported by Fabil."  Supplemental Aff. of Bob

Hammer ("Hammer Aff.") ¶ 2.  The merchandise at issue was imported between January1989 and

May 1990.   The Harmonized Tariff Schedule went into effect in January, 1989, and Mr. Hammer

was aware that the silicon coating Fabil had used on its merchandise in prior years would not pass

the water resistance test prescribed by Additional U.S. Note 2 to Chapter 62 of the HTSUS.[3]  *See id*.

¶ 6.  In light of this, Mr. Hammer states that:

> I required that all shipments of [Fabil's] outerwear for 1989 be coated with a
> chemical which would pass the [water resistance] test.  Fluoropolymer coatings such
> as DuPont's Zepel and several others were on the market in the 1980s.  When I
> visited the Lien-1 Textiles facility [in Taiwan] in 1988 prior to the manufacture of
> any of the fabric used in the entries in these cases, I saw the technical information of
> the Kyoeisha Chemical Co., Ltd. for their fluoropolymer product. . . .  I also saw

---

[3]  Additional U.S. Note 2 to Chapter 62 HTSUS provides that:

> For the purposes of subheadings . . . 6201.93.30 . . . 6202.93.45 . . .,
> the term "water resistant" means that garments classifiable in those
> subheadings must have a water resistance . . . such that, under a head
> pressure of 600 millimeters, not more than 1.0 gram of water
> penetrates after two minutes . . . .  This water resistance must be the
> result of a rubber or plastics application to the outer shell, lining or
> inner lining.

drums of the fluoropolymer resin which were to be used.  I insisted that the Light Guard FR-220 be used on all product destined for Fabil outerwear to both Mr. Tomy Kwok [, who was responsible for the assembly of the merchandise in Hong Kong,] and to the people at the Lien-1 plant.[4]

*Id*.  Nevertheless, Mr. Hammer further explains that:

By the fall of 1989, I appreciated that the Customs Service was not accepting any fluoropolymer coating on any outerwear, . . . at the lower duty rate.  I found out that the Customs Service would accept an acrylic coating because it was visible and would pass the [water resistance] test.

*Id*. ¶ 7.  At Mr. Hammer's direction, Fabil produced a sample jacket with a visible, acrylic coating and sent this jacket to a testing laboratory, where the water resistance test was performed.  *See id*.

Mr. Hammer states that Fabil also sent a fluoropolymer coated jacket to the testing laboratory at the same time, and he claims that both jackets passed the water resistance test.  *See id*.  Following the laboratory test, Mr. Hammer explains that:

The laboratory report was returned to me, and it was given to the Customs Service in January, 1990 which accepted it for entry of outerwear at the 7.6% rate for visible [acrylic] coatings.  Thereafter, I no longer had Fabil's outerwear made with the fluoropolymer coating.  Any shipments in 1990 with the [fluoropolymer] coating were made in 1989.

*Id*.  The laboratory report was apparently never submitted to Customs in conjunction with an entry of fluoropolymer coated merchandise, but Mr Hammer states that he is

---

[4]  Although Fabil apparently believed that the fluoropolymer coating would pass the water resistance test, on its entry documents it claimed classification under an HTSUS subheading for merchandise that was *not* water resistant.  *See* Mem. in Opp'n to Pl.'s Second Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. ("Def.'s Br.") at 10.  Fabil states that prior to a series of rulings issued in 1990, Customs did not recognize fluoropolymer coatings as being water resistant. *See* Hammer Aff. ¶¶ 7, 9.  Fabil contends that if it had attempted to enter its merchandise under the subheading for water resistant garments, Customs would have rejected its entry papers and possibly imposed civil penalties.  *See* Pl.'s Resp. to Def.'s Statement Pursuant to Rule 56(i) ¶¶ 1-2.

certain that the transparent coating finish jacket referred to in the laboratory report was coated with the fluoropolymer . . . resin because: (a) it passed the [water resistance] test, so it could not have been coated with silicone which coating would not pass the [water resistance] test; (b) it was not visible, so it could not have been coated with the acrylic; (c) I had it taken from shipments for our 1989 product line which I knew for the reasons set forth above to be coated with the specific coating referred to.

*Id*.

### *Discussion*

The central issue in this action is simply whether the merchandise at issue had a fluoropolymer coating which made it water resistant under the standard set forth in Additional U.S. Note 2 to Chapter 62 HTSUS. Fabil contends that it is entitled to summary judgment based on the affidavit of Bob Hammer, stating that the merchandise in question had a fluoropolymer coating, and the laboratory report, allegedly demonstrating that this fluoropolymer coating satisfied the requisite water resistance test. Fabil argues that Customs has no justifiable reason to reject the laboratory report, since it previously accepted the report with regard to the acrylic coated merchandise. *See* Pl.'s Br. at 4. Fabil also states that Customs "possesses no information which would contradict" Mr. Hammer's affidavit. Pl.'s Statement of Material Facts Not in Dispute ¶ 4.

As the moving party, Fabil bears the burden of demonstrating the absence of all genuine issues of material fact. *See Avia Group Int'l, Inc. v. L.A. Gear California*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). Although Mr. Hammer states that all of Fabil's 1989 shipments of outerwear were coated with the fluoropolymer Light Guard FR-220, *see* Hammer Aff. ¶ 6, Fabil offers no documentation to support this assertion. Furthermore, there is nothing on the face of the laboratory report indicating that one of the jackets had a fluoropolymer coating, nor is there any specific

description or reference to a style number that could confirm that one of the tested jackets was identical or materially similar to the merchandise at issue. The report only identifies the jackets that were tested as "Style No. 6 Visible Coating Finish" and "Style No. 7 Transparent Coating Finish", and Mr. Hammer states that these style number designations are "without any meaning to [him]." Hammer Aff. ¶ 7. Based on this evidence, Fabil's case is not "so one-sided that [it] must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). There remain factual disputes that must be resolved at trial, and as a result, Fabil's motion for summary judgment is denied. *See Phone-Mate, Inc. v. United States*, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988) (citing *Yamaha Int'l Corp. v. United States*, 3 CIT 108, 109 (1982)) ("The court may not resolve or try factual issues on a motion for summary judgment.")

Next, the Court considers Customs' cross-motion. Customs argues that it is entitled to summary judgment because Fabil "has not made a showing [sufficient] to establish the existence of elements essential to its case, and on points which it bears the burden of proof." Def.'s Br. at 15. Customs bases this motion on *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), which held that:

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id.* at 322-23. Customs also notes that, at trial, its decision is entitled to a presumption of correctness pursuant to 28 U.S.C. § 2639(a)(1).

Although Fabil's evidence is not sufficient to support an award of summary judgment in its favor, neither is it "so weak that [it] does not raise a genuine issue of fact." Def.'s Br. at 14 (quoting

*Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir. 1988)). Due to his position as Vice President of Fabil during the relevant period and his responsibilities with the company, which included "designing, buying, sourcing, . . . and marketing all outerwear garments", Hammer Aff. ¶ 2, Bob Hammer is competent to testify concerning Fabil's merchandise and the orders the company placed with its Asian suppliers. Although the laboratory report does not, independently, provide an adequate link between the tested jacket and the imported merchandise, Mr. Hammer states that these articles had the same coating. *See* Hammer Aff. ¶ 7. Whether his testimony is persuasive requires a weighing of evidence, which is not proper at this stage in the proceedings. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") Moreover, Fabil mentions the possibility of calling additional witnesses from Asia to corroborate Mr. Hammer's statements. *See* Pl.'s Response Mem. at 4. Thus the Court concludes that there is a material issue for trial, and Customs' cross-motion for summary judgment must be denied.

### *Conclusion*

For the foregoing reasons Fabil's motion for summary judgment is denied and Customs' cross-motion for summary judgment is also denied. The parties shall confer and submit, within 30 days of the date of this Opinion, a proposed scheduling order setting a date for trial to determine whether the merchandise at issue was water resistant pursuant to the standard set forth by Additional U.S. Note 2 to Chapter 62 HTSUS.

_____
R. KENTON MUSGRAVE, JUDGE


Dated: May 30, 2001
          New York, New York